FILED

JUL 1 4 2005

[____] A. L. [_____], CLERK
[_____]
[_____] West Virginia

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF WEST VIRGINIA

MUMIN SAHIB ABDULLAH                    *           CIVIL ACTION NO:
                                        *
        Plaintiff,                      *
                                        *
        Vs.                             *           5:05-0568
                                        *
WARDEN MARTY C. ANDERSON                *
A.W. SUE ENGLES                         *
OFFICER D. SIMPSON                      *
OFFICER SNOW (ISM)                      *
OFFICER T. ELLISON                      *
CHAPLAIN LANG                           *
CHAPLAIN BLAND                          *
                                        *

****************************************************************

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, the Plaintiff, Mumin Sahib Abdullah, appearing before this Court by and through Pro Se representation, and respectfully submits this Civil Complaint and Jury Demand seeking damages suffered as a direct result of the actions and omissions of the above named defendants.

### JURISDICTION

1.  The Court has jurisdiction over the Plainfiff's claims of violation of federal constitutional rigthts under 28 U.S.C. §§1331(a) and 1343

2.  The Court has supplemental jurisdiction over the Plaintiff's federal tort claims under 28 U.S.C. §1367

## PARTIES

3.   The Plaintiff Mumin Sahib Abdullah was incarcerated within the Federal Bureau of Prisons (FBOP) at F.C.I. Beckley and is presently incarcerated at U.S.P. Big Sandy.

4.   Defendant Warden Marty C. Anderson was and continues to be the Warden of F.C.I. Beckley at the time of this filing.  He is sued in his individual capacity, as well as official capacity.

5.   Defendant A.W. Sue Engles, was and continues to be the Associate Warden at F.C.I. Beckley at the time of this filing.  She is being sued in her individual capacity, and official capacity.

6.   Defendant Snow was and continues to be the Inmate Systems Manager (ISM) at F.C.I. Beckley at the time of this filing.  He is being sued in his individual capacity, and official capacity.

7.   Defendants D. Simpson and Defendant T. Ellison are correctional officers employed at F.C.I. Beckley.  They are being sued in their individual capacities.  These two officers were working at the Receiving and Departure (R&D) and were in charge of the incoming property, and are also being sued in their official capacity.

8. Defendants Chaplain Lang and Chaplain Bland were and continue to be the two prison Chaplains at the time of this filing.  They are being sued in their individual capacities, and official capacities.

9.   All the Defendant have acted and continue to act as FBOP Correctional Officers and or Administrators at all times relevant to this complaint.

2

## VENUE

10.  A substantial part of the acts and omissions giving rise to the claims in this complaint occurred within the county of Beaver, West Virginia, within the judicial district of the United States Court for the Southern District of West Virginia.

11.  Venue is properly in this court under Title 28, United States Code §1391.

## FACTUAL ALLEGATIONS

12.  on or about February 10, 2004, Petitioner was transferred from FMC Rochester to FCI Beckley on a straight flight, which took him straight to West Virginia.

13.  Petitioner arrived at FCI Beckley the same day of February 10, 2004.

14.  Petitioner was placed in the Special Housing Unit on a trumped up SIS investigation on February 27, 2004 and was released from Special Housing on March 23, 2004.

15.  Upon release from Special Housing Petitioner reported to Receiving and Discharge (R&D), to pick up his personal property.

16.  After arriving at R&D Petitioner's property had already been inventoried and boxed up into two groups.  One with allowable items and one with property to be sent home.

17.  Petitioner requested to be allowed to pick the items of personal property he was to retain.

3

18.   Defendants, Simpson and Ellison were the two R&D officers working during the time in which Petitioner's property was issued and withheld, and they would only allow Petitioner to exchange one a watch and radio.

19.   Petitioner's request to be allowed to retain other religious and personal property was met with hostility and indifference by Defendants Simpson and Ellison.

20.   Petitioner subsequently appealed to Captain Hutchinson, who assisted him in exchanging two pair of his eye glasses.

21.   Petitioner further appealed to Captain Hutchinson to grant him permission to be able to retain all his FBOP authorized transferrable property issued to him, which Defendant Snow (ISM) had denied.

22.   Petitioner filed the necessary Inmate Remedies trying to resolve this issue.

23.   In filing Inmate Remedy (BP-9), Petitioner had showned through documents and FBOP Program Statements that he should have been allowed to retain certain religious and personal items in his property and that Petitioner's property was not inventoried in his presence as it should have been according to FBOP Policy.

24.   After filing Inmate Remedy (BP-10) and getting back the response, Petitioner noticed how R&D officials had prevaricated the issues, misrepresented the facts and had not given Petitioner's Inmate Remedy a fair asessment.

25.   Petitioner subsequently went to Defendant Snow and asked for copies of his Property Forms (form 40s), and after getting them noticed that the dates had been copied over and showed different dates from the originals.

4

26. Petitioner also noticed from the copies of the form 40s obtained from Defendant Snow, that the signature was not consistant with the way he signs his name.

27. Petitioner does not remember signing the form 40 which listed his withheld property and after being sure the dates were change to mislead investigators, Petitioner was very suspicious of the signature.

28. Defendants Simpson, Ellison and Snow conspired together to change the dates on Petitioner's form 40s to give the impression he inventoried his property on the date said property was issured.

29. Defendants Simpson and Ellison also gave Petitioner fales and misleading information about the religious items he was able to retain.  They also conspired along with Chaplain Lang and Bland to deny Petitioner from retaining his religious books. prayer oils, head wear and arabic language translator, which are all approved transferrable items.

30. On or about April 21, 2004, Petitioner again reported to R&D to pick up legal property.  Defendant Simpson, with the approval of Defendant Snow, had taken Petitioner's legal material out of his legal folders and tried to issue Petitioner just the empty folders, simply because the officer who mailed Petitioner's property from his previous institution, listed his legal material as legal folders.

31. Defendants, Simpson, Ellison and Snow, conspired together and with others, and tore the cover from Petitioner's **Holy Qur'an**, on April 21, 2004.

32. On or about August 29, 2004, Petitioner received another **Holy Qur'an** from an Islamic Book Store via US Mail, in which the cover was torn off, the pages were warped and it had a chemical smell.

33.   After Petitioner was again released from the Special Housing Unit for another trumped up investigation, he approached Defendant Snow about why his Holy Quran was altered and desecrated in this manner.

34.   Defendant Snow informed Petitioner that the type of cover that the Holy Quran was manufactured with wasn't allowed in FCI Beckley, so the cover was removed and sent back to the book store.

35.   Petitioner did not accept the altered and desecrated **Holy Qur'an** and asked that it also be sent back to the publisher.

36.   Petitioner afterwards spoke to the Muslim who placed the order for the **Holy Qur'an,** who informed Petitioner that the publisher never received the Holy Qur'an back.

37.   Petitioner had also filed a Inmate Tort for this defacement and desecration of the Islamic Holy Book, which was subsequently denied.

38.   Petitioner was again placed in Special Housing on another trumped up investigation.

39.   Petitioner wrote three letters from September 2004 to November asking for a copy of the disposition on his Administrative Remedy from the Central Office; (his BP-11).

40.   Petitioner never received a response from the Central Office while he was confined at FCI Beckley.

41.   Petitioner had however given Defendant Snow (ISM) Supervisor an address to mail his property to before Petitioner was placed in the Special Housing Unit for the last time before he was transferred.

42.   On December 20, 2004 Petitioner was transferred from FCI Beckley to USP Big Sandy.

43.   Petitioner was hopeful and under the impression since he was

6

not allowed to retain his property while he was at FCI Beckley and was now being transferred all his property was going to be transferred with him.

44.  While getting transferred from FCI Beckley on December 20, 2004, Defendant Ellison again denied Petitioner the right to transfer with his Islamic Head Wear (four kufees), which are authoried transfer- able property within the FBOP.

45.  After arriving at USP Big Sandy and receiving his property from FCI Beckley, Petitioner asked Officer Lockwood (R&D) to contack FCI Beckley and request that all his property be sent to him at USP Big Sandy or sent to his home address.

46.  Approximately a week or so later, Officer Lockwood called Pet- itioner back to R&D and informed him that he had spoken to the R&D at FCI Beckley and that they had two boxes they were prepared to send to an address of Petitioner's choice and gave Officer Lockwood the prices for those mailings.  But, that the property Petitioner was not allowed to retain when he came to FCI Beckley should have been destoyed and they were not going to send it to USP Big Sandy or Petitioner's home.

47.  Petitioner subsequently went to Captain Gourdouze at USP Big Sandy and asked him to please try to have his property sent to him from FCI Beckley.

48.  After waiting approximately 30 days Captain Gourdouze inform- ed Petitioner there was nothing he could do, because FCI Beckley Offici- als never got back in touch with him.

49.  Subsequently Petitioner filed an Administrative Tort, and so- licited the help of the Institution Administrative Remedy Coordinator

(Mrs. Arisman), to get Petitioner a copy and disposition of the BP-11 he never received from FCI Beckley.

50. Petioner also wrote the Central Office as advised by Mrs. Arisman, requesting again that the Central Office provide Petitioner with a copy of his BP-11.

51. The Central Office wrote Petitioner back and instructed Petitioner to go back to the Institution Adminatrative Coordinator.

52. Mrs. Arisman informed Petitioner that there was no copy in the Warden's Admistrative Remedy File, But that she would do what she could to assist me.

53. Subsequently on or about June 7, 2005, Petitioner received via institutional mail a denial of his Administrative Tort claim. At that time Petitioner learned that all his property was considered abandoned and was destroyed by FCI Beckley.

54. The Defendant's in this case exploited the Federal Bureau of Prison Personal Property Policy, to subject Plaitiff to the deprivation of a variety of his rights and privileges.

55. Under Program Statement No: 5580.06, Plaintiff was allowed to retain most of the personal property FCI Beckley denied him.

56. Petitioner possessed a first Amendment liberty interest to be able to possess his prison commissary purchased clothing that was authoried for transfer within FBOP institutions.

57. The presentation of false testimony and/or accusations by FCI Beckley officials with the specific intent to deprive Petitioner of his religious books, religious educational tools, and personal items violates the First and/or Fifth Amendment's due process protections.

8

58.   Defendants, Snow, Simpson and Ellison all knew or reasonably should have known that the presentation of false accusations of how Petitioner's property was inventoried and handled afterward would result in the Petitioner being deprived of his liberty interest of being able to utilize his personal property.

59.   As a direct and proximate result of the conspiracy between the Defendants in this action, the Petitioner lost contact and support of his family and friends, which caused Petitioner emotional and mental anguish.

60.   As a direct and proximate result of the conspiracy between the Defendants in this action, Petitioner was deprived of being able to practice his religion and stay spiritually guided because of being deprived of his religious books, his language translator, prayer oils and religious head gear, all in violation of his First Amendment of Constitutional Protections.

## CAUSES OF ACTION

61.   Petitioner hereby realleges paragraphs 1 through 60 supra as is fully set forth herein.

62.   Defendants, Simpson, Ellison, Snow, Anderson, Engles, Lang and Bland's actions in fraud and forgery upon Petitioner caused the Petitioner personal harm and damages.  Petitioner seeks general damages of $100,000,00 and $300,000,00 in punitive damages from each defendant.

63.   Defendants, Simpson, Ellison and Snow are liable to the Petitioner for intentional infliction of emotional distress.  Petitioner seels the following damages for the emotional distress suffered

from the desecration of Petitioner's two **Holy Qur'ans**.  Petitioner
seeks $100,000,00 in general damages and $300,000,00 in punitive dam-
ages.

## DEPRIVATION OF RIGHTS UNDER
## PROGRAM STATEMENT NO: 5580.06

64.  Petitioner hereby realleges paragraphs 1 through 63 supra
as if fully set forth herein.

65.  Petitioner seeks the following damages from each of De-
fendants, Simpson, Ellison and Snow for violation of his rights do to
the mandatory language in FBOP Program Statement 5580.06 11(b)(c) and
(d), which carries the force of law, $500,000,00 in general damages
and $500,000,00 in punitive damages.

## DEPRIVATION OF FEDERALLY PROTECTED
## LIBERRTY INTERESTS IN FREEDOM FROM SOLITARY CONFINEMENT

66.  Petitioner hereby realleges paragraphs 1 through 65 supra
as if fully set forth herein.

67.  Wardens Anderson and Engles are liable to the Petitioner for
the harm Petitioner suffered in being placed in solitary confinement
on five different occassions on trumped up false investigations as a
retaliation for Petitioner's filing Administrative Remedies, and vio-
lation of the First Amendment's liberty interests in the amount of
$100,000,00 in general damages and $300,000,00 in punitive damages.

10

## CONCLUSION

Petitioner had been incarcerated for a period of 10 years before being transferred to FCI Beckley. He had followed every rule mandated by the Code of Federal Regulations (CFR), which governs all federal agencies and institutions. Subsequently, Petitioner had never been sighted for an institutional infraction. Petitioner has followed Bureau Procedure of Administrative Remedy trying to correct the abuse and disregard for the same CFR's, Program Statements and Institutional Supplements he is expected to honor and adhere to. Petitioner has given a true and precise detail of the events as they have occured. Yet, FBOP officials have circumvented the policies of the Program Statements and their own Institutional Supplements. The Defendants in this action have all purposely prevaricated the facts and violated the constitutional rights that Petitioner retains under the Due Process Clause of the Fifth Amendment.

Petitioner has a liberty and property interest in this matter because the statues and regulation which govern federal institutions intitled Petitioner's property not to be destroyed. Such conduct should be punished to deter future conduct of this kind.

**WHEREFORE,** the Petitioner Mumin Sahib Abdulah, respectfully prays that this court will enter judgement against the above named Defendants and order all damages requested. Petitioner further prays that this court set this case for jury trial and order fees and costs to be assessed against the Defendants.

11

Respectfully submitted this <u>7th</u> day of <u>   July      </u>, 2005.


*Mumin Sahib Abdullah*
Mumin Sahib Abdulah
Reg. No: 29919-037
USP Big Sandy
P.O. Box 2068
Inez, KY. 41224


Petitioner Pro-Se

## CERTIFICATE OF SERVICE

I, Mu'min Sahib Abdullah, do hereby certify that I have served
by placing in the prison mailbox, a true and correct copy of the
foregoing instrument, to the clerk of court for the Southern District
of West Virginia, on this 7th  day of ___July_____ , 2005
with sufficient first class postage affixed to ensure delivery.


                                    _Mu'min Sahib Abdullah_
                                    Mu'min Sahib Abdullah