**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| MUMIN SAHIB ABDULLAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 5:05-0568** |
| | ) | |
| MARTY C. ANDERSON, Warden, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants' Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 50). The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss or for summary judgment. (Document No.50.) Plaintiff has filed a Response to Defendants' Motion and an Affidavit in Support. (Document No. 56.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the Defendants' Second Motion to Dismiss, or in the Alterative, Motion for Summary Judgment.

**FACTUAL AND PROCEDURAL HISTORY**

On July 14, 2005, Plaintiff, formerly incarcerated at Federal Correctional Institute [FCI] Beckley, in Beaver, West Virginia, filed a Complaint and an Application to Proceed *in forma pauperis*. (Document Nos. 1 and 2.) Plaintiff claims entitlement to relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau

of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971).[1] (Document No.1.) Plaintiff names

as Defendants administrative and correctional officers at FCI Beckley in their official and individual

capacities. Plaintiff states that he was transferred from FMC Rochester to FCI Beckley on or about

February 10, 2004. (Id., ¶ 12.) He claims that he was placed in the Special Housing Unit [SHU] from

February 27 to March 23, 2004, "on a trumped up SIS investigation." (Id., ¶ 14.) Upon his release

from the SHU, Plaintiff reported to the receiving and discharge department to pick up his personal

property. (Id., ¶ 15.) His property had been inventoried with items designated as allowable and

others withheld to be sent home. (Id., ¶ 16.) Plaintiff asked to be allowed to keep some of the

withheld property which included religious items, and having some success in obtaining some but

not all of the property informally, Plaintiff began the administrative remedy process. (Id., ¶¶ 17 -

23.) Plaintiff claims that Defendants misrepresented facts in responding to his grievances and altered

an inventory document. (Id., ¶¶ 24 - 29.) Plaintiff asserts that Defendants withheld certain legal

material and tore the cover off of two copies of his Holy Quran. (Id., ¶¶ 30 - 32.) It appears that

Plaintiff was placed in the SHU three or four more times before December 20, 2004, when he was

transferred from FCI Beckley to USP Big Sandy. (Id., ¶¶ 33, 38 and 41 - 42.) At USP Big Sandy,

Plaintiff continued working to obtain the property which was withheld at FCI Beckley and to obtain

responses to his administrative grievances. He states that he learned on June 7, 2005, that all of his

property was considered abandoned and destroyed at FCI Beckley. (Id., ¶ 53.) He claims that FCI

Beckley officials' conduct in the administrative process and in withholding his religious and

personal property violated his rights under the First and Fifth Amendments. (Id., ¶ 57.) Plaintiff

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held
to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

asserts that he had a liberty interest in his personal and religious property, he was deprived of its use and the right to practice his religion and lost the contact and support of his family and friends as a result of Defendants' conduct. (Id., ¶¶ 58 - 60.)

By Order filed on December 7, 2005, the undersigned granted Plaintiff's Application to Proceed *in forma pauperis* and directed the Clerk to issue process upon receipt of Plaintiff's initial partial payment of $25 of the Court's filing fee. (Document No. 6.) Plaintiff made the initial payment, and the Clerk issued process on April 12, 2006. (Document Nos. 7 - 8.)

On August 25, 2006, Defendants filed their first Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support. (Document Nos. 26 and 27.) Defendants claimed that Plaintiff's Bivens claim should be dismissed due to his failure to fully exhaust his administrative remedies with respect to all of his claims under Bivens and therefore dismissal was required under the "total exhaustion rule." (Document No. 27, p. 4.) Specifically, Defendants argued that Plaintiff failed "to file any administrative remedies complaining staff placed him in the Special Housing Unit on false charges or that staff retaliated against him for filing grievances." (Id.) Defendants acknowledged that Plaintiff exhausted his administrative remedies concerning his property claim. (Id.) Respecting Plaintiff's FTCA claim, Defendants argued as follows: (1) The United States is the only proper defendant in an FTCA suit and the remaining defendants should be dismissed; (2) Plaintiff is not entitled to punitive damages, monetary recovery beyond that sought at the administrative level, or recovery for emotional or psychological damages absent physical injury or a jury trial under the FTCA (Id., pp. 8 - 11.); (3) All claims which Plaintiff raised that were not presented administratively are barred (Id., p. 11.); (4) Plaintiff's constitutional rights claims are not cognizable under the FTCA (Id., p. 12.); (5) Plaintiff's claim that BOP staff

failed to follow BOP policy is not cognizable under the FTCA (<u>Id.</u>); and (6) Plaintiff failed to state a claim for which relief can be granted under the FTCA because BOP staff did not act negligently in identifying Plaintiff's property which was not authorized for retention and was destroyed. (<u>Id.</u>, pp. 13 - 21.)

On January 22, 2007, Plaintiff filed his response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and a Motion for Leave to Amend Complaint (Document Nos. 34 and 36.) Plaintiff sought to amend his Complaint to (1) add the United States as a party, (2) state facts in support of his <u>Bivens</u> and FTCA action based only upon his property claim designated administratively as Agency No. TRT-MXR-2005-02214; (3) withdraw his requests for a jury trial and punitive damages and damages for constitutional violations under the FTCA; and (4) request damages for emotional and psychological damages accompanied by physical injury. (Document No. 36, p. 2.) Respecting his claims under <u>Bivens</u>, Plaintiff asserts that Defendants were deliberately indifferent to (1) his right to possess clothing that he purchased at the prison commissary that was authorized for transfer within BOP institutions; (2) his religious and due process rights by depriving him of his religious educational tools and personal items, which prevented him from practicing his religion and staying spiritually guided; and (3) his medical needs by causing him to lose contact and support of his family and friends and to experience emotional and mental anguish and loss of use of his hands from nervousness and shaking. (Document No. 40, p. 3.)

On October 5, 2006, the undersigned filed his Proposed Findings and Recommendation concluding that Plaintiff's Motion to Amend Complaint should be granted and Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, should be granted in part and

4

denied in part. (Document No. 38.) The Court concluded that Plaintiff had exhausted his administrative remedies with respect to his property claim. Therefore, the undersigned recommended that (1) Plaintiff should be permitted to proceed with his <u>Biven</u> claims as it appeared that he was alleging a violation of his First and Fifth Amendment rights with respect to the detention of his personal property, (2) Defendants' Motion should be granted to the extent that Plaintiff conceded that Defendants' assertions were meritorious concerning Plaintiff's FTCA claim, and (3) Defendants' Motion should be denied to the extent it sought dismissal based upon Plaintiff's failure to state a claim upon which relief could be granted under the FTCA because there were issues of fact in dispute. By Memorandum Opinion and Order entered on March 22, 2007 (Document No. 39.), the District Court adopted the undersigned's Proposed Findings and Recommendations and remanded this matter to the undersigned for further proceedings.

On March 3, 2008, the undersigned entered its Scheduling Order setting forth the time frame for the completion of discovery. (Document No. 44.) Following discovery, Defendants filed their Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with Memorandum in Support on June 5, 2008. (Document Nos. 50 and 53.) Defendants argue that Plaintiff's <u>Bivens</u> claims must be dismissed for the following reasons: (1) Defendant Anderson should be dismissed for insufficient service of process; (2) Plaintiff fails to state a claim upon which relief may be granted; (3) Defendants Anderson and Engels must be dismissed for lack of personal involvement; (4) Defendants Anderson and Engels must be dismissed because *respondeat superior* is inapplicable in personal liability actions; (5) Defendants Lang and Bland must be dismissed for lack of personal involvement; and (6) Defendants are entitled to qualified immunity. Defendants further contend that Plaintiff's FTCA claims must be dismissed because the United States has sovereign immunity.

5

(Document No. 53.)

On June 6, 2008, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the Defendants' Second Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 52.) On June 23, 2008, Plaintiff filed a Motion for Extension of Time to File Response to Defendants' Second Motion. (Document No. 54.) By Order entered on June 25, 2008, the Court granted Plaintiff's Motion for Extension of Time. (Document No. 55.) On August 1, 2008, Plaintiff filed his Response to Defendants' Motion to Dismiss. (Document No. 56.) Plaintiff argues that Defendants' Motion to Dismiss should be denied because "Plaintiff and Defendants actually disagree about one or more important and material facts presented by this case." (<u>Id.</u>, p. 1.) Plaintiff claims that his personal property items were authorized transferrable items, which did not pose a safety or security threat. (<u>Id.</u>, pp. 3 - 5.)

## THE STANDARD

### Rule 12(b) Dismissal

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Bell Atlantic Corporation v. Twombly</u>, ____ U.S. ____, 127 S.Ct. 1955, 1959, 167 L.Ed.2d 929 (2007)(reference to <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), omitted.) Dismissal is proper under Rule 12(b)(6) where, construing the allegations of the Complaint in a light most favorable to the Plaintiff

and assuming the alleged facts to be true, it is clear as a matter of law that no relief could be granted under any set of facts which could be proven consistent with the allegations. Deference is given to *pro se* Complaints. See Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978)(A District Court should allow *pro se* plaintiffs reasonable opportunity to develop pleadings.); Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir. 1965)(*Pro se* plaintiff should be given an opportunity to particularize potentially viable claims.). A *pro se* Complaint may therefore be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45 - 46 (1957). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co., Inc. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## **DISCUSSION**

### I.  **Plaintiff's Bivens Claim.**

The allegations stated in Plaintiff's Complaint of violations of his constitutional rights are cognizable under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under

color of federal law.[2] The United States Supreme Court has held that an inmate may name a federal

officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional

violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171

(1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or

public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86,

114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991);

<u>Reingold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

### A.    Insufficient Service of Process of Defendant Anderson:

Defendant Anderson first contends that he should be dismissed for insufficient service of

process. It is well-settled that individual service is required in a <u>Bivens</u> action. Rule 4(i)(3) of the

Federal Rules of Civil Procedure provides in pertinent part as follows:

> To serve a United States officer or employee sued in an individual capacity for an act
> or omission occurring in connection with the performance of duties performed on the
> United States' behalf (whether or not the officer or employee is also sued in an
> official capacity), a party must serve the United States and also serve the officer or

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not
assert claims of personal liability against prison officials for violations of their constitutional rights.
*Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may
assert claims of personal liability against individual prison officials for violations of their
constitutional rights but may not assert claims against the government or prison officials in their
official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72,
that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that
Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted
that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens*
as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying
upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not
automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990).
The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1)
only compensatory damages are available in FTCA actions, whereas compensatory and punitive
damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens*
claims may be tried to a jury. *Id.*

employee under Rule 4(e), (f), or (g).

Accordingly, pursuant to Rule 4(e), service on Defendant Anderson should have been effected by delivering a copy of the Complaint to him personally, by leaving a copy of the Complaint at his respective dwelling, or by delivering a copy of the Complaint to an agent authorized by appointment or by law to receive service of process. See Fed. R. Civ. Proc. 4(e)(2). Instead, service was attempted on Defendant Anderson by a copy of the Summons and Complaint being delivered to Defendant Simpson at FCI Beckley and there is no evidence that Defendant Anderson authorized any staff member at FCI Beckley to receive service on his behalf. Accordingly, Defendant Anderson's motion to dismiss for insufficient service of process should be granted because Defendant Anderson is sued individually as part of Plaintiff's Bivens claim and Plaintiff failed to serve him individually as required by the Federal Rules of Civil Procedure.

### B.       Exhaustion of Administrative Remedies:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is

11

pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. <u>See</u> <u>Dale v. Lappin</u>, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a <u>Bivens</u> suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

Exhaustion requirements concerning FTCA and <u>Bivens</u> actions differ.[4] <u>See</u> <u>Davis v. U.S.</u>,

---

[4]  The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. *See* 28 U.S.C. § 2675(a). *See also Bellomy v. United States*, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994) (*citing Henderson v.*

2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); Murphy v. Inmate Systems Management, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the

---

*United States*, 785 F.2d 121, 123 (4th Cir. 1986), *Muth v. United States*, 1 F.3d 246 (4th Cir. 1993). Thus, before an inmate can bring a claim under the Federal Tort Claims Act, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the Federal Tort Claims Act is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants contend that Plaintiff failed to exhaust fully his administrative remedies prior to filing his Bivens Complaint with respect to some of his claims regarding the withholding of his personal property. (Document No. 53, pp. 5 - 7.) Defendants state that Plaintiff

14

filed two administrative remedies concerning incidents occurring at FCI Beckley, which involved the withholding of his personal property: Remedy Id. No. 331206-F1, R1, and A1 (alleging that FCI Beckley violated policy in inventorying and denying specific property items); and Remedy Id. No. 332488-F1, R1 (asserting that Plaintiff's personal and legal property was improperly withheld).[5] Therefore, Defendants argue that Plaintiff's "only fully exhausted claim is Remedy Id. No. 331206, which is a challenge to the manner in which [Plaintiff's] property was inventoried at FCI Beckley and the denial of specific property items: specifically, his boots, shower shoes, religious headwear, prayer oil, language translator, thermal underwear, sweat pants, address book, and eyeglasses." (Document No. 50-2, p. 3.)

In response, Plaintiff attaches documents relating to Administrative Remedy Id. No. 331206. Plaintiff does not appear to dispute that he failed to exhaust his administrative remedies concerning Remedy Id. No. 332488.

On April 16, 2004, Plaintiff filed an administrative remedy request at the institutional level (Remedy ID 331206-F1) alleging that staff disregarded policy by denying Plaintiff the following personal property items: boots, shower shoes, religious headwear, prayer oil, language translator, thermal underwear, sweat pants, address book, and eyeglasses. (Document No. 50-2, pp. 11, 19, and 20.) On April 29, 2004, Warden Anderson denied Plaintiff's request finding that neither BOP nor FCI Beckley policy permitted Plaintiff to retain the above personal property items. (Id., p. 18.) Plaintiff timely appealed the denial at the institutional level to the Regional Office, where it was rejected on June 3, 2004. (Remedy ID 331206-R1). (Id., pp. 12 and 23 - 24.) On July 1, 2004,

---

[5] Following the adoption of the undersigned's Proposed Findings and Recommendation, the only remaining *Bivens* claim is whether Defendants violated Plaintiff's First and Fifth Amendment rights by withholding Plaintiff's personal property.

Plaintiff appealed the rejection to the Office of General Counsel (Remedy ID 331206-A1). (Id., pp. 13, 27, and 28.) The appeal was rejected on August 27, 2004. (Id., pp. 13 and 26.)

On April 26, 2004, Plaintiff filed an administrative remedy request at the institutional level (Remedy ID 332488-F1) alleging that "staff AGAIN would not allow him to have his personal and legal property from a box shipped from sending institution." (Id., p. 11.) On May 14, 2004, Warden Anderson denied Plaintiff's request. (Id.) On June 8, 2004, Plaintiff appealed his denial at the institutional level to the Regional Office (Remedy ID 332488-R1). (Id., p. 12.) The request was rejected on July 7, 2004. (Id.) Plaintiff failed to appeal the rejection to the Office of General Counsel. (Id., p. 3.)

After reviewing the record, the undersigned finds that Plaintiff has exhausted his administrative remedies respecting Remedy Id. No. 331206. Thus, Plaintiff has fully exhausted his claim that his constitutional rights were violated with respect to the withholding of the following personal property items: boots, shower shoes, religious headwear, prayer oil, language translator, thermal underwear, sweat pants, address book, and eyeglasses.[6] To the extent Plaintiff raises additional claims in Remedy Id. No. 332488, the undersigned finds that Plaintiff has not exhausted his administrative remedies.

**C.      Failure to State a Claim upon which Relief can be Granted:**

Having concluded that Plaintiff exhausted remedies respecting his constitutional claim that Defendants violated his First and Fifth Amendment rights by withholding certain personal property items, it is appropriate to consider those exhausted claims on their merits under Bivens. In their

---

[6]  The undersigned notes Plaintiff's personal property was not destroyed until 2005. Thus, it is clear that Plaintiff did not raise his claim of improper destruction of personal property in the administrative process for Remedy Id. No. 331206, which was finalized on July 7, 2004.

16

Motion, Defendants argue that Plaintiff has failed to state a claim upon which relief may be granted because (1) Plaintiff's due process rights were not violated, and (2) Plaintiff's First Amendment Rights were not violated. (Document No. 53, pp. 7 - 14.)

      **(1)      Due Process:**

Plaintiff complains that Defendants violated his due process rights by improperly retaining certain items of personal property upon his transfer to FCI Beckley. Specifically, Plaintiff alleges that the following items of personal property were improperly withheld: boots, shower shoes, religious headwear, prayer oil, language translator, thermal underwear, sweat pants, address book, and eyeglasses. Program Statement 5580.06 sets forth the rules pertaining to the BOP's management of inmates' personal property. Attachment A of the Program Statement contains a list of personal property items authorized for retention and transfer between institutions. Section 7(c) of the Program Statement provides that inmates "may not be issued, permitted to purchase, or have in their possession any clothing items, or pieces of cloth, which are dark blue, black, red, or camouflage in color." Attachment A authorizes the transfer of only white and gray shower shoes and classifies insulated underwear as a nontransferable item. Section 9(b)(2) of the Program Statement provides that "altered personal property" is considered as prohibited "nuisance contraband." Attachment A authorizes the transfer of only two pairs of sweat pants. Section 7(f) of the Program Statement provides that language translators are "permitted and limited to those inmates who have displayed a need." Attachment A of the Program Statement limits the transfer to one language translator that is "small, electronically unsophisticated, inexpensive, non-print feature/battery or solar operated." Institutional Supplement 5580.06a, Attachment B, authorizes only one address book to be maintained in an inmate's personal property and authorizes four pieces of religious headwear

17

approved by the Chaplain. Section 11 of the Program Statement specifies the procedures respecting inmates' personal property when they are transferred and released. It states as follows at Section 11(b)[7]:

> b. If the inmate's personal property is not authorized for retention by the receiving institution, staff at the receiving institution shall arrange for the inmate's excess personal property to be mailed to a non-Bureau destination of the inmate's choice. The inmate shall bear the expense of the mailing.

Courts deem inmates' claims respecting prison officials' intentional deprivation of their property cognizable under Bivens to the extent that due process rights are implicated. See Manning v. Booth, 2005 WL 1200122, *2 (D.Md.)("In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy."); Bigbee v. United States, 359 F.Supp.2d 806 (W.D. Wis. 2005); cf. Laury v. Greenfield, 87 F.Supp.2d 1210, 1214 - 1215 (D.Kan. 2000), quoting Burton-Bey v. United States, 100 F.3d 967, 1996 WL 654457 (10th Cir.(Kan.))(Defendants negligent or intentional deprivation of plaintiff's property does not violate due process if there is a meaningful post-deprivation remedy for the loss.)

In their Motion, Defendants argue that Plaintiff's due process rights were not violated because Plaintiff had a "meaningful post-deprivation remedy through the Bureau of Prisons' administrative remedy program." (Document No. 53, p. 7.) In response, Plaintiff contends that Defendants violated his due process rights under the Fifth Amendment by withholding his personal property items that were authorized, transferrable items. (Document No. 56, pp. 3 - 5.) Specifically, Plaintiff argues that he purchased his language translator from a religious catalog approved by the FCI Cumberland. (Id., p. 2.) Plaintiff attaches as an exhibit a copy of an advertisement for a Digital

---

[7] See also 28 C.F.R. § 553.14(b) and (c).

Quran Reader from the religious catalog allegedly approved by FCI Cumberland. (Id., p. 25.)

Based upon the record, Plaintiff's personal property was inventoried and classified pursuant to the applicable BOP regulations. Some of Plaintiff's property was deemed unauthorized and disallowed. Plaintiff's boots and shower shoes were not authorized for retention or transfer based upon the colors of the shoes. (Document No. 50-2, p. 17.) Plaintiff's thermal underwear was withheld because it was not an item of personal property which was authorized for transfer. (Id.) Plaintiff's three pairs of sweat pants were withheld because the pants had been altered and were considered "nuisance contraband." (Id.) Two of Plaintiff's address books were withheld because policy authorizes only one address book to be maintained in an inmate's personal property. (Id.) Plaintiff was provided two pairs of eyeglasses, but complains that the eyeglasses were in poor condition even though he was allowed to exchange several pairs. (Id.) Plaintiff was erroneously provided only two kufis, but was provided two additional kufis once the error was brought to the Chaplain's attention. (Id.) Plaintiff was provided with three bottles of prayer oil even though prayer oil was not authorized for transfer.[8] (Id.) Plaintiff's language translator was disallowed because it was classified as a sophisticated device with the capability to store information.[9] (Id.) Although Plaintiff argues that he purchased the language translator from a religious catalog approved by FCI Cumberland, the prices of the language translators ranged from $159.95 to $199.95. (Document No.

---

[8] Defendant Simpson explained that the prayer oil was not transferable because "these types of items . . . may spill in the box during transfer and damage other property in the box, as well as the fact that it is difficult to search these types of product for contraband." Although the prayer oil was not transferrable, Defendant Simpson stated that Plaintiff was provided with a few bottles of his prayer oil. (Document No. 50-4, p. 9, Exhibit 5.)

[9] Defendants determined Plaintiff's language translator to be sophisticated because it had a memory card. (Document No. 50-4, p. 2, Exhibit 2.)

19

56, p. 25.) Thus, it also appears that Plaintiff's language translator would not be classified as an "inexpensive" language translator pursuant to FCI Beckley policy. Plaintiff was further provided numerous opportunities to mail his unauthorized property to a non-Bureau destination, but Plaintiff failed to provide an address or postage for the mailing. (Document No. 50-3, pp. 30 - 31.) While there may have been some error in the classification of Plaintiff's property, the undersigned finds that the circumstances do not implicate a violation of Plaintiff's constitutional rights. Plaintiff had meaningful post-deprivation remedies through the BOP's Administrative Remedies Program and he availed himself to them. Manning v. Booth, 2005 WL 1200122, *2 (D.Md.), citing Shabazz v. Odom, 591 F.Supp. 1513, 1517 (M.D.Pa. 1984). Accordingly, Plaintiff's due process claim must be dismissed.

### (2)    First Amendment:

Inmates clearly retain certain constitutional protections notwithstanding their convictions and confinement in prison. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3198, 82 L.Ed.2d 393 (1984); Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Of the rights retained by inmates upon incarceration is the right to practice their religion while in prison. See O'Lone, v. Estate of Shadbazz, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." The United States Supreme Court, however, has specifically found that inmates retain only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the

corrections systems." Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2827, 2804, 41 L.Ed.2d 495 (1974). Therefore, prison policy "alleged to infringe constitutional rights [is] judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone, 482 U.S. at 349, 107 S.Ct. at 2405.

In Turner v. Safley, 482 U.S. 78, 85, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987), the United States Supreme Court formulated a reasonableness test sensitive to both the need to protect the constitutional rights of inmates and the policy of judicial restraint regarding prisoner complaints. The Court determined that when a prison regulation or decision impinges on a prisoner's right to free exercise of religion, the regulation is valid if it is "reasonably related to a legitimate penological interest." Id. In determining whether a prison regulation is constitutionally permissible, the Court should consider the following four factors: (1) Whether there is a rational connection between the regulation and the legitimate government interest invoked to justify it; (2) Whether the inmate has an alternative means of exercising the right in question; (3) The impact that accommodation of the asserted right would have on prison officials, other inmates, and the allocation of prison resources; and (4) Whether there is a ready alternative that would fully accommodate the inmate's rights. Id., at 79 - 80. The Court is required to give deference to the judgment of prison administrators in First Amendment challenges. United States v. Stotts, 925 F.2d 83, 86 (4th Cir. 1991). Once prison officials establish a legitimate penological interest to justify their action, the inmate has the burden to show that these interests were irrational. Ford v. McGinnis, 352 F.3d 582, 595 (2nd Cir. 2003).

Prior to considering the Turner factors, the Court must first determine whether the challenged policy impinges on a First Amendment right. Ali v. Dixon, 912 F.2d 86, 89 (4th Cir. 1990). Thus, the plaintiff must first show that his belief is sincere and also that his claims are rooted in that

religious belief and not in "purely secular" concerns. Wisconsin v. Yoder, 406 U.S. 205, 215-16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972); see also Turner, 482 U.S. at 89-91, 107 S.Ct. at 2262-63; O'Lone, 482 U.S. at 345, 107 S.Ct. 2402-03. The Defendants do not challenge the sincerity of Plaintiff's religious beliefs. Therefore, the Court will turn to whether the Defendants have unreasonably restricted Plaintiff's right to freely practice his religion.

In their Motion, Defendants argue that Plaintiff's religious rights were not impinged by the limitation on the number of kufis and bottles of prayer oil he could possess or his inability to possess an electronic translation device. (Document No. 53, pp. 11 - 12.) Defendants contend that the prison regulations were reasonably related to a legitimate penological interest. (Id., pp. 12 - 13.) Defendants further assert that Plaintiff had alternative means of exercising his religious rights. (Id., pp. 13 - 14.)

In response, Plaintiff argues that Defendants violated his First Amendments rights by depriving him of his prayer oils, religious headwear, and language translator. (Document No. 56.) Plaintiff claims that he was unable to practice his religion and stay spiritually guided because of the above deprivations. Plaintiff further contends that the challenged prison regulations violate his First Amendment rights because the regulations are not "reasonably related to legitimate penological interest. (Id., p. 4.)

First, the Court will consider "whether there is a valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it." Program Statement 5580.06 limits the type and amount of personal property that inmates may possess. The underlying purpose of Program Statement 5580.06, is explained as follows: "These rules contribute to the management of inmate personal property in the institution, and contribute to a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems which relate to

22

inmate personal property." P.S. 5580.06, Section 1. Attachments A and B of Program Statement 5580.06 set forth personal property items that may be transferred between institutions. Attachment A of the Program Statement authorizes one language translator, which is "small, electronically unsophisticated, inexpensive, non-print feature/battery or solar operated."[10] Attachment B authorizes the transfer of four items of religious headwear that are approved by the Chaplain.

The undersigned finds that there is a valid, rational connection between the above regulations limiting an inmate's personal property and a legitimate penological interest of maintaining a safe environment and managing inmate personal property. See Gonzalez v. Litscher, 79 Fed. Appx. 215 (7th Cir. 2003)(holding that prison restrictions allowing Native American inmates to possess only one religious text and one small braid of sweet grass were reasonably related to legitimate penological interests and thus did not violation the inmate's First Amendment rights.); Morrison v. Garraghty, 239 F.3d 648, 658 (4th Cir. 2001)(stating in *dicta* that there is little doubt that a state prison regulation that "limits the possession of personal property by prison inmates is designed to serve legitimate safety and security concerns."); Friend v. Chapleau, 68 F.3d 474 (6th Cir. 1995)(*unpublished*)(finding that prison policy limiting the amount of personal property that a prisoner may possess in his cell does not impinge upon a prisoner's constitutional rights). The Court notes that prison security and management concerns make it necessary to restrict the number of

---

[10]  Program Statement 5580.06 was in effect until December 28, 2005, when it was replaced by Program Statement 5580.07. Both Program Statements 5580.06 and 5580.07, limit language translators to those with a need. Institution Supplement BEC 5580.06a was in effect from June 30, 2002, until July 15, 2004, when it replaced BEC 5580.06b. Institution Supplement BEC 5580.06b was in effect from July 15, 2004, until July 30, 2005, when it was replaced by BEC 5580.06c. Institution Supplements BEC 5580.06a, b, and c, limit electronic translators to those that were small, electronically unsophisticated, inexpensive, non-print feature, and were battery or solar operated. (Document No. 50-2, p. 3, Exhibit 1.)

personal property items an inmate may possess. Security concerns demand the regular search of inmate cells and an unlimited amount of religious and other property items would place an excessive burden on staff when conducting such searches. Property-related security concerns include theft, bartering, misuse of property to fashion weapons, using property to hide contraband, and utilizing property to signify gang affiliation. Additionally, health and safety concerns arise from allowing cluttered cells, which can lead to unsanitary conditions and possible fire hazards. See Joseph v. Campbell, 10 Fed. Appx. 264 (6th Cir. 2001)(holding that the restriction on inmates' use of oils was rationally related to a legitimate penological interest in security because oils are flammable and could be used to mask the odor of drugs, and not in violation of the First Amendment because inmates had an alternative means of using oils through religious volunteers visiting the prison.) Therefore, the undersigned finds that there is a valid, rational connection between the regulation limiting Plaintiff's religious items and FCI Beckley's legitimate penological interest of maintaining a safe and secure environment.

Next, the Court will consider "whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates." Specifically, Plaintiff complains that he was unable to practice his religion and stay spiritually guided because Defendants withheld his language translator and allowed him only three half empty bottles of prayer oil and two kufis. Plaintiff, however, fails to show how limiting the number of kufis and bottles of prayer oil prevented him from exercising his religion. Additionally, the record indicates that Plaintiff was provided two additional kufis and allowed to exchange his three half empty bottles of prayer oil for three full bottles. Defendants concede that Plaintiff's language translator was withheld due to security

reasons.[11] Although Plaintiff asserts that the retention of this language translator prevented him from reading his Quran, the undersigned finds that there were alternative means of translation available to Plaintiff. First, FCI Beckley's Religious Services Department contained books and other religious materials to assist inmates in the translation of the Quran. (Document No. 50-4, pp. 4 - 7, Exhibits 3 and 4.) Secondly, FCI Beckley offered the services of Riaz Dar, a contract Imam, who is fluent in Arabic and was available at the institution on a weekly basis to assist the Muslim inmate community. (Id.) Finally, Chaplains Lang and Bland stated that they would have contacted a Muslim Chaplain at other BOP facilities to assist Plaintiff in translating Arabic passages, if Plaintiff had requested such assistance. (Id.) Based on the foregoing, the undersigned finds that Plaintiff had alternative means of exercising his religion even though Defendant's limited the number of kufis and the bottles of prayer oil that Plaintiff could possess and prevented Plaintiff's use of his sophisticated language translator.

Finally, the Court will address the remaining Turner factors to the extent that Plaintiff is alleging that inmates should be permitted to possess sophisticated language translators and an unlimited number of kufis and bottles of prayer oil. The undersigned finds that the above prison regulations do not represent an "exaggerated response" to prison concerns. If inmates were allowed to possess unlimited amounts of personal property items and sophisticated electronic devices, safety and sanitation concerns would arise which would impact other inmates and prison officials. Accordingly, the undersigned finds that Plaintiff has failed to demonstrate that Defendants' policies

---

[11]  Defendants determined that the language translator caused security concerns because it enabled Plaintiff to "store information on the card and staff would not have the ability to access the information or search the information on the card to ensure it did not threaten the security of the institution." (Document No. 50-4, p. 2, Exhibit 2.)

prevented his free exercise of religion in violation of the First Amendment.

### D.    Defendants Anderson and Engels.

Next, Defendants Anderson and Engels contend that Plaintiff's claims against them must be dismissed as they are improperly raised under the doctrine of *respondeat superior*.[12] (Document No. 53, pp. 14 - 16.) The Fourth Circuit recognized in <u>Trulock v. Freeh</u>, 275 F.2d 391, 402 (4th Cir. 2001), <u>cert. denied</u>, 537 U.S. 1045, 123 S.Ct. 621, 154 L.Ed.2d 517 (2002), that "[i]n a Bivens suit there is no *respondeat superior* liability. <u>See</u> <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995). Instead, liability is personal, based upon each defendant's own constitutional violations. Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflect on those committed to their care." <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" <u>Id.</u> at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. <u>Id.</u>

Defendants Anderson and Engels argue that Plaintiff has failed to demonstrate specifically how they were personally involved in violating any of Plaintiff's constitutional rights. (Document No. 53, pp. 14 - 16.) Essentially, Plaintiff alleges that these Defendants violated his constitutional rights with respect to their responses to his administrative remedy and tort claim. The evidence of

---

[12]  Defendant Anderson was the Warden of FCI Beckley, and Defendant Engels was the Associate Warden of FCI Beckley.

record reveals that Defendant Engels had no involvement in the denial of Plaintiff's administrative remedy request. With respect to Defendant Anderson, the evidence of record establishes that he signed the denial of Plaintiff's administrative remedy request at the institutional level. Plaintiff, however, has shown no other personal involvement by Defendant Anderson.[13] (Document No. 50-2, pp. 17 - 18.) The dismissal of a defendant is appropriate where the defendant's sole involvement in an action is related to the administrative remedy process. Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). The undersigned therefore finds that Plaintiff has failed to specify any action taken by Defendants Anderson and Engels that violated Plaintiff's constitutional rights. As discussed above, nothing concerning the retention of certain personal property items violated Plaintiff's constitutional rights and Defendants Anderson and Engels cannot be found to have tacitly authorized any unconstitutional conduct. Accordingly, Plaintiff has improperly raised his claim against Defendants Anderson and Engels under the doctrine of *respondeat superior*, has failed to establish supervisory liability and therefore, Defendants Anderson and Engels must be dismissed as defendants in this civil action.

---

[13]   The undersigned notes that Defendant Anderson also signed the form authorizing the destruction of Plaintiff's abandoned property in February and May, 2005. As discussed above, Plaintiff only exhausted his administrative remedies as to Remedy Id. No. 331206, which was denied by the Central Office prior to the destruction of Plaintiff's property. Therefore, Plaintiff has not exhausted his administrative remedies concerning the destruction of the property.

**E.    Defendants Lang and Bland.**

Defendants Lang and Bland further argue that they must be dismissed "for the lack of personal involvement." (Document No. 53, pp. 16 - 18.) Plaintiff's sole claim against Defendants Lang and Bland is that they conspired with Defendants Simpson and Ellison to deny Plaintiff's religious property. (Document No. 40, p. 5.) Plaintiff's conclusory allegations of a conspiracy, however, do not establish a constitutional violation. To allege a claim of conspiracy, Plaintiff must establish the following elements: (1) an agreement between two or more persons, which constitutes the act, and (2) the doing of either an unlawful act or a lawful act by unlawful means. See United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996), cert. denied, 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997). Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore, fails to state a cognizable claim. See Brown v. Angelone, 938 F.Supp. 340, 346 (W.D.Va. 1996). Plaintiff does not allege any facts to establish that Defendants Lang and Bland formed an agreement with Defendants Simpson and Ellison to improperly retain Plaintiff's religious property. Defendants Lang, Bland, Simpson, and Ellison submitted sworn declarations that they did not deprive Plaintiff of his property as part of a conspiracy. (Document No. 50-4, pp. 4 - 12, Exhibits 3- 6.) Moreover, it does not appear that Defendants Lang and Bland denied Plaintiff's religious property. (Document No. 50-4, pp. 5 and 7, Exhibits 3 and 4.) In fact, Plaintiff admits in his administrative remedy request that Defendants Lang and Bland assisted him in obtaining two additional kufis. (Document No. 50-2, p. 20, Exhibit 1.) Therefore, Plaintiff has failed state a claim against Defendants Lang and Bland.

**F.    Qualified Immunity:**

Finally, Defendants assert that they should be dismissed from the above action because they

are protected by qualified immunity. Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there is no protection against suits accusing them of misconduct in the performance of their public duties. Federal officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). In Harlow, the Court stated that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may determine

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. In a case in which the defense of qualified immunity is raised, the Court looks to the evidence before it in the light most favorable to the plaintiff when conducting its inquiry of whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996). The District Court must determine first whether "particular conduct occurred," and second, "whether uncontroverted conduct represented the [violation of a constitutional right]." Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996), reh'g en banc denied, 105 F.3d 174 (1997). Only if the Court determines that the plaintiff alleges the

violation of a clearly established constitutional right does the Court then proceed to determine whether a reasonable person in the defendants' position should have known that their conduct was illegal. Id.; Leverette v. Bell, 247 F.3d 160, 166 (4th Cir. 2001), cert. denied, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001)(The Fourth Circuit follows a two-step sequential analysis for determining the validity of a qualified immunity defense: (1) the Court must determine whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and, if so, (2) the Court then proceeds to consider whether that right was clearly established at the time of the purported violation.); Pittman v. Nelms, 87 F.3d 116, 199 (4th Cir. 1996); DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995).

> The responsibility imposed on public officials to comply with constitutional requirements is commensurate with the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct. It is not measured by the collective hindsight of skilled lawyers and learned judges. * * * "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

Jackson v. Long, 102 F.3d 722, 730-31 (4th Cir. 1996); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(noting that qualified immunity is "an *immunity from suit* rather than a mere defense to liability" and "such pretrial matters as discovery are to be avoided if possible[.]" (Emphasis in opinion.)). Finding therefore consistently with Harlow that issues of qualified immunity should be resolved at the earliest possible stage of the litigation, the Fourth Circuit has adopted a "heightened pleading standard." Dunbar Corp. v. Lindsey, 905 F.2d 754, 763 (4th Cir. 1990); see also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(noting that qualified immunity is "an *immunity from suit* rather than a mere defense to liability" and "such pretrial matters as discovery are to be avoided if possible[.]" (Emphasis in

opinion.)). The "heightened pleading standard" requires specification of the clearly established rights involved and relates to the degree of factual specificity required in the Complaint. <u>Dunbar Corp.</u>, 905 F.2d at 763.

The undersigned finds that the facts viewed in the light most favorable to the Plaintiff do not establish a deprivation of an actual constitutional right. As discussed above, the undersigned finds that Defendants did not violate Plaintiff's constitutional rights by restricting and withholding certain items of Plaintiff's personal property. Defendants' qualified immunity defense is therefore meritorious, and Plaintiff's claims must be dismissed for this additional reason.

## II.     **Plaintiff's FTCA Claim.**

Plaintiff asserts a negligence claim under the Federal Tort Claims Act against the United States Government. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." <u>United States v. Muniz</u>, 374 U.S. 150 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u> Section 2680, however, exempts from the waiver certain categories of claims. <u>See</u> 28 U.S.C. §§ 2680(a)-(n). Section 2680(c) provides that the waiver of immunity in Section

1346(b) shall not apply to "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." In Ali v. Federal Bureau of Prisons, __ U.S. ___, 128 S.Ct. 831, 841, 169 L.Ed.2d 680 (2008), the United States Supreme Court recently held that "Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers." Ali v. Federal Bureau of Prisons, __ U.S. ___, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008). Thus, pending FTCA actions involving the detention or mishandling of personal property by prison officials are subject to dismissal. See Mathis v. U.S., 2008 WL 2922798 (D.S.C. July 24, 2008)(plaintiff's FTCA claim that prison officials were negligent in transferring his personal property was dismissed based upon Section 2680(c)); Wadley v. Warden, 2008 WL 2455445 (W.D.Va. June 16, 2008)(FTCA claim that prison officials were negligent in seizing and destroying his tennis shoes was dismissed based upon Section 2680(c)). The undersigned finds that Plaintiff's claim that prison officials were negligent in the retention of his personal property falls squarely within the "detention exception" as set forth in Section 2680(c). Accordingly, Plaintiff's FTCA claim must be dismissed.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants' Second Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Document No. 50.), **DISMISS** Plaintiff's Complaint as amended (Document Nos. 1 and 40.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby

32

**FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have thirteen days from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*, and counsel of record.

Date: August 14, 2008.

R. Clarke VanDervort
United States Magistrate Judge